UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michelle A. Baker,<br><br>        Plaintiff,<br><br>v.<br><br>Cenlar FSB,<br><br>        Defendant. | Case No. 20-cv-0967 (JRT/HB)<br><br>**ORDER ON PLAINTIFF'S MOTION TO COMPEL** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiff's Motion to Compel Full and Complete Discovery Responses [ECF No. 40]. For the reasons set forth below, the Court grants in part and denies in part the motion.

## I.    Background

### A.    Plaintiff's Complaint

Plaintiff Michelle Baker brought suit against Cenlar FSB, Christian Bank & Trust, and CitiMortgage, Inc., on April 16, 2020. (Compl. [ECF No. 1].) Cenlar answered the Complaint [ECF No. 6] but CitiMortgage moved to dismiss on the ground, *inter alia*, that the Complaint included no allegations that named or pertained to CitiMortgage.[1] (Mem. Supp. Mot. Dismiss at 6 [ECF No. 10].) That motion was granted on November 25, 2020. (Ord. on R&R [ECF No. 29].)

Plaintiff filed an Amended Complaint against only Cenlar on December 8, 2020.

---

[1] It does not appear that Christian Bank & Trust was ever served with the Complaint.

1

(Am. Compl. [ECF No. 30].) In it, she alleges that Cenlar "illegally tried to foreclose" on certain property in Andover, Minnesota, "[a]fter receiving tender of payment from [Plaintiff]."[2] (*Id.* ¶ 1.) She further alleges that Cenlar "continued foreclosing procedures after being informed that the property was no longer owned by [Plaintiff]." (*Id.* ¶ 2.) She alleges that Cenlar is "a third-party intervenor," with no standing to foreclose on the property, and is not a "Real Party of interest" for that property. (*Id.* ¶ 4.) The Amended Complaint also appears to allege that Plaintiff owns trademark rights in the name Michelle A Baker and that Cenlar violated those rights when it used the name in a local newspaper listing for the foreclosure. (*Id.* ¶ 3.) Plaintiff asks the Court to "den[y] with prejudice" the foreclosure on the property, and to award "[m]onetary damages for trademark violation, breach of fiduciary duties, stress and mental anguish." (*Id.* at 7.) Cenlar answered the Amended Complaint, denying for the most part Plaintiff's allegations other than the location and identification of the property at issue, and specifically denying as to Paragraph 2 that "any such legitimate payment was made to Cenlar." (Am. Answer ¶ 2 [ECF No. 32].)

The Court entered a Pretrial Scheduling Order on February 10, 2021, establishing a July 1, 2021, deadline for the completion of fact and expert discovery.[3] (Sched. Ord. at

---

[2] With regard to the concept of "tender of payment," the Amended Complaint also includes several pages of discussion entitled "Formal Requirement of a Tender of Payment at Common Law." (*Id.* at 4–6.) The Amended Complaint does not, however, contain any specifics about the date or form of the "tender of payment" Plaintiff alleges she made to Cenlar.

[3] The parties have advised the Court that neither intends to call an expert. (June 15, 2021 Min. [ECF No. 47].)

4, 10 [ECF No. 36].)

### B. Plaintiff's Discovery Requests

Plaintiff sent a three-page document entitled "Discovery Plan" by email to Defendant's counsel on February 8, 2021.[4] (Pl.'s Ex. 1 [ECF No. 44] ("the February 8 Requests").) The document contained several sections, including sections headed "Case against CENLAR FSB," "Facts to be proven," and "Discovery." The "Discovery" section contained the following:

> 1. Requests for Production - Plaintiff will be unable to acquire the necessary information to commence and maintain a suit against CENLAR FSB without discovery.
>    a. Documents showing location of the negotiable instrument.
>    b. Documents showing persons with knowledge of any fact related to the location and how the negotiable instrument was used (i.e., was the instrument monetized, did.CENLAR FSB receive the full value of the negotiable instrument).
>    c. Copies of quarterly CALL Reports that reference account number 4768020630/Negotiable instrument in question.
>    d. Memos, emails, etc. showing communication between employees of CENLAR regarding the negotiable instrument and the account of MICHELLE A BAKER.
>    e. Any and all accounting and ledgers/balance sheets regarding the account of MICHELLE A BAKER and/or the negotiable instrument.
>    f. Subpoena Duces Tecum.

(*Id.* at 2.)

It appears Defendant's counsel did not initially realize Plaintiff intended the above document to constitute a formal set of requests for production of documents under Federal Rule of Civil Procedure 34. But when Plaintiff followed up after not receiving

---

[4] The document is dated January 27, 2021, but Plaintiff represents in her memorandum that she served it by email on February 8, 2021. (*See* Pl.'s Mem. Supp. Mot. at 1 [ECF No. 41].)

3

responses to the requests, Defendant's counsel served written responses and produced documents on April 5, 2021. (Pl.'s Ex. 3 [ECF No. 44-2].)

A common element of Plaintiff's requests, but not defined in the "Discovery Plan" document, is the term "negotiable instrument." Defendant's written responses indicate that it understood "negotiable instrument" to refer to the promissory note signed by Plaintiff at the time she entered into the mortgage on the property in issue. (*See id.* at 1 (responding to the request for "documents showing the location of the negotiable instrument" by stating that the "promissory note is held by the document custodian of CitiMortgage, Inc.").) In the parties' subsequent meet-and-confer discussions, however, Plaintiff clarified that "negotiable instrument" was intended to refer to the "tender of payment" that she alleges she made to Cenlar and which Cenlar received by certified mail on August 5, 2019.[5] (Def.'s Mem. Opp. at 1 [ECF No. 45].) That intended meaning was reiterated in her motion papers to the Court. (*See, e.g.*, Pl.'s Mem. Supp. Mot. at 3 (referring to the "negotiable instrument submitted for tender of payment"); *id.* at 5 ("I demand to know what happened to the tender of payment CENLAR received via certified mail on August 5, 2019.").) Because of its initial misunderstanding of Plaintiff's

---

[5] At the hearing, Plaintiff further elaborated that the "tender of payment" was a notarized document that purported to transfer certain IRS "credits" to Cenlar by way of payment on her mortgage account, provided Cenlar followed "special deposit" instructions that were enclosed with the "tender." She stated that the package containing the "tender of payment" and the instructions was addressed to Steven Gozdan, the Chief Financial Officer of Cenlar, and that a notary public sealed it and sent it by certified mail. She stated that she does not have a copy of the "tender of payment" that was sent to Cenlar, but she does have and has produced to Cenlar a copy of an inventory prepared by the notary public of the items that were included in the package, and a copy of the certified mail receipt showing delivery of the package to Cenlar.

requests, Defendant did not address the "tender of payment" in any of its written responses to Plaintiff's discovery. Defendant did, however, produce its "full account servicing notes which outline all activity with the account and includes notations as to calls and account entries." (Def.'s Mem. Opp. at 2.) Plaintiff acknowledged at the hearing that she received 87 documents, including two Excel files, one of which contained over 2,400 lines of data relating to her account activity, including references to communications to and from Plaintiff relating to the account. She stated, however, that there was no mention in any of the documents or files produced by Cenlar of Cenlar's receipt or disposition of the "tender of payment."

Subsequently, in response to Plaintiff's clarification of the term "negotiable instrument" during the meet-and-confer process, Defendant "looked further into the matter" and Defendant's counsel informed Plaintiff that Defendant "was unable to locate any such 'notice of tender.'" (*Id.*) Defendant's memorandum in response to this motion represents that Defendant "has no further information about the account or the 'negotiable instrument' beyond what is included in the account servicing notes." (*Id.*) To the best of the Court's knowledge, however, Defendant has not supplemented its written responses to the February 8 Requests with regard to this issue.

On May 3, 2021, Plaintiff served an updated "Discovery Plan" on Defendant's counsel. (Pl.'s Ex. 2 [ECF No. 44-1] (the "May 3 Requests").)[6] The "Requests for

---

[6] The "May 3 Requests" are also dated January 27, 2021, but Plaintiff represents in her memorandum that she emailed them to Defendant's counsel on May 3, 2021. (*See* Pl.'s Mem. Supp. Mot. at 1.)

5

Production" in the updated Discovery Plan read as follows:

1. Requests for Production - Plaintiff will be unable to acquire the necessary information to commence and maintain a suit against CENLAR FSB without discovery.
   a. Documents that show the chain of title pertaining to the mortgage note for the property at: 16167 Unity St. SW, Andover MN 55304
   b. Documents showing location of the negotiable instrument.
   c. Documents showing persons with knowledge of any fact related to the location and how the negotiable instrument was used (i.e., was the instrument monetized, did.CENLAR FSB receive the full value of the negotiable instrument, did CENLAR FSB discard the instrument).
   d. Copies of quarterly CALL Reports that reference account number 4768020630/Negotiable instrument in question.
   e. Memos, emails, etc. showing communication between employees of CENLAR regarding the negotiable instrument and the account of MICHELLE A BAKER.
   f. Any and all accounting and ledgers/balance sheets regarding the account of MICHELLE A BAKER and/or the negotiable instrument.
   g. Is CENLAR FSB foreclosing on behalf of CITI MORTGAGE INC. or is the foreclosure for the benefit of CENLAR FSB

(*Id.* at 2.)

Thus, the May 3 Requests in large part replicated the February 8 Requests, with three exceptions: the lettering changed somewhat and there were two new requests, items (a) and (g).[7] (*Compare* Pl.'s Ex. 2 at 2 *with* Pl.'s Ex. 1 at 2.) Plaintiff stated during the hearing that the instant motion seeks to compel further responses to items (b) through (f) of the *May 3 Requests* (which correspond to items (a) through (e) of the February 8

---

[7] Item (f) of the February 8 Requests—"subpoena duces tecum"—was not replicated in the May 3 Requests, and is not an enforceable request for production of documents in any event, as in and of itself it does not describe with particularity any item or category of items as required by Federal Rule of Civil Procedure 34(b)(1)(A), nor did it comply with any of the requirements of Rule 45.

Requests) and to item (g).[8]  As to items (b) through (f) of the May 3 Requests, Defendant did not serve new responses but relied on its written responses and documents produced in connection with the corresponding February 8 Requests.  As to new item (g), Defendant, through counsel, has "advised Plaintiff that there is no pending foreclosure and that the foreclosure has been cancelled for many months," and that therefore "the request is moot."  (Def.'s Mem. Opp. at 3.)

## II.  Discussion

Discovery on a matter is permissible if it is (1) "relevant to any party's claim or defense" and (2) "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(1) offers some factors courts should consider in making this analysis: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  Rule 37 permits a party to move for an order compelling discovery.  Fed. R. Civ. P. 37(a).  Once the party seeking the discovery has made a threshold showing of relevance, the court generally looks to the party resisting discovery to show specific facts demonstrating lack of relevancy or undue burden.  *Inline Packaging, LLC v. Graphic Packaging Int., Inc.*, 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016).  But the advisory committee notes to Rule 26(b)(1) make clear that there is not a rigid allocation of the burden between the parties, and both parties should be

---

[8]  Plaintiff confirmed during the hearing that item (a) of the May 3 Requests was not at issue in her motion.

expected to bring the information available to them that may bear on these factors. "The court's responsibility, using all the information provided by the parties, is to consider [the proportionality factors] in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

### A. Items (b) through (f) of the May 3 Requests

Fundamentally, items (b) through (f) of the May 3 Requests, like their February 8 counterparts, seek documents that might shed light on the location, use, and disposition of the "negotiable instrument," now understood to be the "tender of payment" that Plaintiff states Cenlar received by certified mail on August 5, 2019. (Pl.'s Ex. 2 at 1.)

The Court notes at the outset that although Defendant challenges whether a "tender of payment" of the sort described by Plaintiff was valid in any way, Defendant does not (at least for purposes of this motion) challenge whether discovery about the location, use, and disposition of that document is relevant to the claims in this case. The only objection interposed by Defendant to any of the requests at issue in this motion was an objection to item (c) (item (b) of the February 8 Requests), which seeks documents "showing persons with knowledge of any fact related to the location and how the negotiable instrument was used." Defendant objected that the request was overly broad, unduly burdensome, and irrelevant. While Defendant's objection was conclusory, Defendant's memorandum in response to Plaintiff's motion reveals that its principal concern was that the request, as phrased, could be read to seek all documents showing every person who had or might ever have had access to or contact with any of Plaintiff's account information. Interpreted thus, a request for documents showing all such persons

8

would indeed be overly broad and disproportionate to the needs of the case. However, Plaintiff clarified at the hearing that she is focused on documents containing information pertaining to the whereabouts, use, and disposition of the "tender of payment" she contends Cenlar received on August 5, 2019, and on the identification of any individuals who know that information. With that clarification, it is neither irrelevant nor disproportionate to the needs of the case to require Defendant to take reasonable steps to search for and produce documents showing persons who have that knowledge, if any exist.

The question, therefore, is whether Defendant has complied with its obligations to search for and produce documents responsive to items (b) through (f)—as now understood—or to confirm that no such documents exist. Plaintiff argues that the receipt by Cenlar of any document purporting to represent attempted payment on an account would ordinarily have been noted in the account servicing notes. Furthermore, she argues, if Cenlar deemed the payment defective for any reason, it would ordinarily have returned the document to the debtor, and noted that in the account servicing notes as well. Since she has a receipt showing the package that purportedly contained the "tender of payment" was delivered to Cenlar, and since there is no mention of that "tender of payment" in the account servicing notes, she contends Defendant has not complied with its obligations to search for information about what happened to it.

Defendant does not disagree with this description of Cenlar's typical practices. Indeed, Defendant's counsel elaborated at the hearing that in the ordinary course of business, if such a document were received at the executive offices (such as that of the

Chief Financial Officer) it would be forwarded by the executive office staff to the department responsible for processing payments, which would be responsible for either processing the payment (if it deemed the form of payment valid) and crediting the debtor's account, or (if it deemed the form of payment invalid) returning it to the debtor. He further acknowledged that in either event, it would have been Cenlar's practice to make a note of any such account activity in the account servicing notes. But he further represented, in communications with Plaintiff as well as in Defendant's responsive memorandum and at the hearing, that a reasonable search has been conducted and Cenlar has been unable to locate any information that shows the "tender of payment" was received, let alone what happened to it afterward. Defendant argues that it cannot produce documents or information it does not have.

Plaintiff acknowledges, as she must, that if no responsive documents exist, they cannot be produced. But she observes that the representations to that effect have all come in the course of the meet-and-confer process and/or in counsel's memorandum in response to her motion, and she has no formal written responses to either the February 8 or May 3 Requests confirming the scope of the search or the results thereof. For example, nothing in the written responses (which were prepared before Plaintiff had explained to Defendant's counsel what she meant by "negotiable instrument") specifically represents that Defendant conducted a diligent search to determine whether it has documents or records beyond the account servicing notes—such as emails, internal communications, or financial records, as requested in items (e) and (f)—that refer to or reflect the receipt, forwarding, processing, discussion of, or disposition of the "tender of

payment" or, for that matter, any of the other documents in the package that Plaintiff claims was delivered to Cenlar's executive offices on August 5, 2019. Nor do the responses specifically confirm that, having conducted such a diligent search, Defendant has determined that it has no such records.

Accordingly, Defendant is ordered, to conduct a diligent search, to the extent it has not done so already, for documents responsive to the May 3 Requests (b) through (f) in those locations where responsive documents, if they exist, would be maintained, and to produce no later than **July 1, 2021,** any additional responsive, non-privileged documents it finds. This must include making appropriate inquiries of any department or departments that would have handled or processed such a package of documents had it been received, including but not limited to whether anyone in those departments might have generated emails, records, or internal communications about such documents in any manner other than by making entries in the account servicing notes that were already produced to Plaintiff.

The Court further orders that following the completion of the search but no later than **July 1, 2021,** Defendant must serve written responses to each of the May 3 requests for production (b) through (f) (which will also serve as supplemental responses to the February 8 requests (a) through (e)). Those responses must specifically note the clarification that the term "negotiable instrument" refers to the "tender of payment" that Plaintiff claims was delivered to Cenlar on or about August 5, 2019, as well as the clarification of the scope of item (b) as set forth *supra* at 8, must include a description of the diligent search conducted, and must include either an unequivocal statement that no

11

documents could be located beyond those that were previously produced to Plaintiff or a statement that additional responsive documents were located through that search and are being produced with the written responses.[9]

### B. Item (g) of the May 3 Requests

Unlike items (b) through (f) discussed above, item (g) is not a request for documents. Rather, it asks a question: "Is CENLAR FSB foreclosing on behalf of CITI MORTGAGE INC. or is the foreclosure for the benefit of CENLAR FSB?" Thus, this item is more properly characterized as an interrogatory, governed by Federal Rule of Civil Procedure 33. As already discussed, Defendant "advised Plaintiff that there is no pending foreclosure and that the foreclosure has been cancelled for many months," and that therefore "the request is moot." (Def.'s Mem. Opp. at 3.) While it is true that the question is framed in the present tense, Plaintiff seeks information about whether *at the time the foreclosure was pending* Cenlar was acting on its own behalf or on behalf of CitiMortgage. Defendant's counsel has apparently responded to that question in correspondence, but Plaintiff requests that the answer be provided as an "official" response of Cenlar, which the Court understands to mean that it be answered in writing under oath by an officer or agent of Defendant, consistent with Rule 33(b)(1)(B) and 33(b)(3), thus allowing Plaintiff to use it as evidence to the extent allowed by the Federal Rules of Evidence. Fed. R. Civ. P. 33(c). The Court finds that to be a reasonable

---

[9] In the event responsive documents are located that are withheld in good faith because of a claim of privilege or work product protection, the written responses must clearly so state and must be accompanied by a privilege log.

request, and Defendant's counsel did not object at the hearing to doing so. Accordingly, Defendant is ordered to provide to Plaintiff on or before **July 1, 2021,** a verified answer to the question "At the time CENLAR FSB foreclosed on the property, was it foreclosing on behalf of CITI MORTGAGE INC. or was the foreclosure for the benefit of CENLAR FSB."

      **C.**      **Plaintiff's Request for an Extension of the Deadline for Fact Discovery**

The deadline for the completion of fact discovery is July 1, 2021. Plaintiff seeks an extension of 30 days to allow her to review any additional documents produced and possibly to conduct one or more depositions of Defendant or its employees. Defendant states that it does not require any additional time beyond July 1 to complete discovery. Although it is very possible there are no additional documents to be produced, Plaintiff will not have confirmation of that until July 1. Accordingly, the Court will grant the extension of fact discovery to **July 30, 2021**, but only for the purpose of taking depositions. Absent agreement of the parties or further order of this Court for good cause shown, no new requests for written discovery (i.e., under Rules 33, 34, or 36) may be served by either party. The parties' obligations under the rules to supplement their initial disclosures and their responses to any discovery already served remain in effect. All other deadlines and provisions in the Pretrial Scheduling Order [ECF No. 36] remain in effect.

**III.**    **Conclusion**

Accordingly, based upon all of the files and proceedings herein, Plaintiff's Motion to Compel Full and Complete Discovery Responses [ECF No. 40] is **GRANTED IN**

**PART AND DENIED IN PART** as specifically set forth herein.

Dated: June 18, 2021
                                               *s/ Hildy Bowbeer*
                                               HILDY BOWBEER
                                               United States Magistrate Judge